# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | |
|---|---|
| **DEANIE LEE BURTNER,** | ) |
| | ) |
| Plaintiff, | ) Case No. 2:09CV00004 |
| | ) |
| v. | ) **OPINION** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) By: James P. Jones |
| **COMMISSIONER OF** | ) Chief United States District Judge |
| **SOCIAL SECURITY,** | ) |
| | ) |
| Defendant. | ) |

*H. Ronnie Montgomery, Montgomery Kinser Law Offices, P.L.C., Jonesville, Virginia, for Plaintiff; Jillian Kipp, Assistant Regional Counsel, Eric P. Kressman, Acting Regional Chief Counsel, Region III, and Andrew C. Lynch, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

The plaintiff, Deanie Lee Burtner, filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for supplemental security income pursuant to title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401- 433, 1381-1383d (West 2003 & Supp. 2009). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g) and § 1383(c)(3).

Burtner filed for benefits on February 7, 2005, alleging disability beginning May 17, 2000. Her claim was denied initially and upon reconsideration. An administrative law judge ("ALJ") held a hearing in which both Burtner, represented by counsel, and a vocational expert ("VE") testified. The ALJ denied Burtner's claim on July 24, 2007. The agency's decision became final when the Social Security Administration's Appeals Council denied Burtner's request for review. On January 26, 2009, Burtner filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, and have briefed the issues. The case is ripe for decision.

II

Burtner was forty-two-years old when she filed for disability, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(c) (2009). Burtner attended school through the eleventh grade but never graduated or received her GED. Burtner worked summers as a tobacco laborer after the alleged onset of her disability. Previously, she had also worked as a grocery cashier, a cleaner, and a punch press operator.

Burtner asserts that her disability began after a back procedure performed on May 17, 2000. At the administrative hearing before the ALJ on June 26, 2007, Burtner presented medical evidence to substantiate her disability claim. Burtner testified that her main medical impairments were problems with her back, asthma, and "bad" nerves. (R. at 372.)

After reviewing the evidence from the administrative hearing, the ALJ found that Burtner suffered from the severe impairments of a back disorder and borderline to low average intellectual functioning. The ALJ concluded that either alone or in combination, Burtner's impairments were not the medical equivalent of any of the agency's listed impairments. The ALJ determined that Burtner had "the residual function capacity to perform simple, unskilled light work which allows for frequent postural changes but does not involve exposure to dust, fumes, or temperature extremes." (R. at 24.) None of Burtner's previous work generated enough earnings to qualify as past relevant work according to the ALJ, so he did not evaluate whether she would be able to return to one of her previous jobs.

The VE, Cathy Sanders, testified that someone with Burtner's limitations would be able to perform the duties of representative occupations such as an entry-level administrative assistant, a telephone-answering clerk, a desk clerk, a host or greeter, and with a stool, a cafeteria or fast-food cashier. The VE estimated that there

are approximately 6,200 such jobs in the region and 975,000 in the national economy. Relying on this testimony, the ALJ concluded that Burtner is able to perform work that exists in significant numbers the national economy and is therefore not disabled. Burtner argues that this conclusion is not supported by substantial evidence. For the reasons detailed below, I disagree.

III

The plaintiff bears the burden of proving that she is suffering from a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the

national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *See id.*; *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *See* 20 C.F.R. §§ 416.920(a)(4), (e) (2009); *see also Reichenbach v. Heckler*, 808 F.2d 309, 311(4th Cir. 1985).

In accordance with the Act, I must uphold the ALJ's findings if substantial evidence supports them and they were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). It is not the role of this court to substitute its judgment for that of the Commissioner. *See id.*

A

First, Burtner contends that the ALJ erroneously determined that Burtner's anxiety and adjustment disorder with depressed mood were not severe impairments. To determine the degree of functional limitations caused by a mental impairment, the Commissioner evaluates the impairment's impact on four broad areas of function: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. *See* 20 C.F.R. § 416.920a(c)(3) (2009). If the Commissioner finds the first three areas are either not impacted or mildly impacted, and also finds no episodes of decompensation, then it is generally determined that the mental impairment is not severe. *See id.* § 416.920a(d)(1) (2009).

In evaluating Burtner's mental disorders, the ALJ found that she had no restrictions in activities of daily living, mild difficulties maintaining social function, mild difficulties maintaining concentration, persistence, and pace, and no repeated episodes of decompensation. The ALJ relied on the reports of Dr. Lanthorn, two state agency medical consultants, and treatment records. Burtner claims that the ALJ inappropriately based his finding on the fact that Burtner had not sought treatment for her condition and then compounded the error by relying on the opinions of non-treating state agency physicians in the face of a contrary opinion from Dr. Lanthorn,

an examining physician. However, the evidence does not support Burtner's assertions.

For one thing, Dr. Lanthorn did not find that Burtner suffered from anxiety. Dr. Lanthorn diagnosed Burtner with an adjustment disorder. Although there are two subtypes of adjustment disorders that include anxiety (anxiety, 309.3; and mixed anxiety and depressed mood, 309.28), Dr. Lanthorn diagnosed Burtner with one that did not include anxiety—309.0, the depressed mood subtype. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 623-24 (4th ed. 1994). The essential feature of the adjustment disorder with depressed mood is that the development of its symptoms, such as depressed mood, tearfulness, and hopelessness—comes as a result of one or more psychosocial stressors. *Id.* In Burtner's case, Dr. Lanthorn found the stressors to be unpaid bills, her mother's cancer, troubles with her boyfriend, her father's heart disease, general worry about her grandchildren, and her lack of an adequate support system.

Notably, Dr. Lanthorn did not find her psychological symptoms severe. In fact, he gave her a score of sixty on the Global Assessment of Functioning ("GAF") scale,[1] which indicates a moderate, bordering on mild, difficulty in social or

---

[1] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Am. Psychiatric Ass'n, *supra*, at 32.

occupational functioning. *Id.* at 32; *see also* 20 C.F.R. § 416.920(a) (2009) (stating that an impairment's severity depends on the functional loss it causes). Dr. Lanthorn also found that Burtner could remember, concentrate, and maintain a routine, that she had fair social interaction, that she adequately related to others, adapted, and performed self-help skills. The state agency's non-treating, non-examining physicians found Burtner to have mild difficulties in maintaining concentration, persistence, pace, and social functioning, but no other limitations or signs of decompensation. Thus, it was proper for the ALJ to cite the non-examining physicians' findings for additional support because they were congruent with Dr. Lanthorn's. *See Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984) (ruling that a non-examining, non-treating physician's report may be relied upon when it is not contradicted by all other evidence in the record).

Burtner's claim that the ALJ improperly relied on Burtner's failure to pursue treatment when determining whether or not Burtner suffered from severe anxiety or adjustment disorder also fails. The ALJ did note that "[t]here is no evidence the claimant has followed through with mental health treatment." (R. at 23.) However, reliance on this fact is only inappropriate if Burtner's failure was due to a lack of funds:

> While a claimant's failure to obtain medical treatment that she cannot afford cannot justify an inference that her condition was not as serious as she alleges, an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility.

*Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (citation omitted). Although Burtner claims she did not get further treatment because of a lack of funds, the record shows that because of her income, Burtner was able to pay only $10 per counseling session and her physician could order her medication at reduced rates. However, she chose not to pursue these options.

Furthermore, even if it was improper for the ALJ to rely upon Burtner's failure to seek treatment, this error was harmless because there was substantial other evidence that Burtner's anxiety and adjustment disorder were not severe impairments. The opinions of Dr. Lanthorn and the state agency physicians alone constituted substantial evidence. Their findings were further substantiated by the fact that in the dozen or more of Burtner's visits to doctors between September 2000 and August 2005, none of her medical records indicated that she ever complained of anxiety or depression. Burtner mentioned she had symptoms of anxiety and depression due to issues with her grandchild once on September 8, 2000 and then not again until August 4, 2005, when she again noted she felt some anxiety. Also, Burtner admitted she did

not have psychological difficulties with her daily living activities. Burtner told Dr. Lanthorn she was able to cook for her boyfriend, do laundry, clean, wash dishes, and go to church without any psychological impairments. Burtner also indicated in her function report that her illnesses did not affect her concentration too often, and she could follow spoken instructions "really well" and pay attention "most of the time." (R. at 116.) Therefore, substantial evidence supports the ALJ's conclusion that Burtner did not suffer from severe anxiety or adjustment disorder.

B

Finally, Burtner argues that the ALJ erred by determining that Burtner did not have past relevant work as defined under 20 C.F.R. § 416.920(f) (2009). Burtner contends that her work as a seasonal tobacco worker, a medium unskilled job, qualifies as past relevant work. Yet, because Burtner admitted to working as a seasonal tobacco worker after purportedly becoming disabled, this contention, even if true, could not possibly help her case.

Contrary to Burtner's assertion, whether or not a claimant performed past relevant work does not affect how the claimant's residual functional capacity is determined. *See* 20 C.F.R. §§ 416.920(e)-(g) (2009). Also, under step one of the disability analysis, if a claimant has engaged in substantial gainful employment since the date her disability began, she is not disabled. *See* 20 C.F.R. §§ 416.920(a)(4)(i),

.920(b), .971 (2009). Thus, if Burtner's seasonal tobacco work is relevant previous work, she would be ineligible for benefits, but at step one, rather than step five, of the analysis because she would have engaged in substantial gainful work after the onset of her alleged disability. *See id.* § 416.960(b)(1) (defining "past relevant work" as "substantial gainful activity"). Therefore, even if the ALJ did err, this error was in Burtner's favor, and does not require that the ALJ's determination be overturned.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: February 27, 2010

 /S/ JAMES P. JONES
Chief United States District Judge